IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ZERLEAN COOPER, | ) | 1:10-cv-899  AWI DLB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER ON DEFENDANTS' |
| | ) | MOTION TO DISMISS AND |
| MATTHEW CATE, Secretary of the | ) | MOTION TO STRIKE |
| California Department of Corrections & | ) | |
| Rehabilitation, et al., | ) | |
| | ) | (Doc. No. 32) |
| Defendants. | ) | |

This is an employment discrimination case brought by Plaintiff Zerlean Cooper ("Cooper") against her former employer the California Department of Corrections and Rehabilitation ("CDC"), Secretary of CDC Matthew Cate ("Cate"), Warden Mary Lattimore ("Lattimore"), Chief Deputy Warden Jose Cavazos ("Cavazos"), Associate Warden Michael Tann ("Tann"), and Captain Frank Sanders ("Sanders") (collectively "Defendants").  The operative complaint is the Second Amended Complaint ("SAC").[1]  The SAC alleges various violations of Title VII and 42 U.S.C. § 1983 claims based on violations of the First and Fourteenth Amendments.  Defendants move under Rule 12(b)(6) to dismiss the SAC, and move under Rule 12(f) to strike the request for punitive damages.  For the reasons that follow, the Court will grant in part and deny in part the motion.

---

[1]This case was stayed pursuant to stipulation on January 3, 2011, because Cooper had yet to receive a right to sue letter from the EEOC.  On July 24, 2011, Cooper filed the SAC after obtaining an EEOC right to sue letter.

# **BACKGROUND**

From the SAC, Cooper is a 56 year old African-American woman.  Cooper began her employment with CDC in 1987.  Over the years, Cooper received numerous certificates from CDC, including certificates for outstanding performance.  In January 1996, Cooper was promoted to the rank of Correctional Lieutenant.  Cooper was assigned to the Central California Women's Facility ("the Prison").  There are approximately 27 correctional lieutenants, and less than 3% of them are African-Americans.  During the relevant time period, Cooper was the Visiting Lieutenant.  Cooper was responsible for guest and security clearances, mail room, visitations (including several yearly programs), transportation, and parole hearings.

In August 2003, Cooper was a witness in a retaliation complaint filed by a female coworker.  Cooper was questioned and gave true answers about the allegations of retaliation, Cooper's knowledge of the complainant's conversations with the Prison administration, and Cooper's training and knowledge regarding Prison policies and procedures.

On October 5, 2005, a Ms. Sanchez (who was an ex-felon), visited the Prison and complained to another lieutenant that Cooper would not let Sanchez's children enter the prison. Sanchez had not followed the appropriate procedure.  Sanchez used the term "nigger" twice while referring to Cooper.  On October 19, 2005, the prison refused to accept Cooper's complaint against Sanchez for discrimination.  On December 26, 2006, the EEO Coordinator for the prison notified Cooper that they would not accept her complaint about Sanchez.

On March 5, 2007, Cooper wrote a letter complaining about an undue and excessive work load.[2]

On January 3, 2008, Capt. Harding made inappropriate or sexist comments to Cooper.[3] On January 17, 2008, Cooper filed a formal complaint against Harding for hostile work environment.  In February 2008, CDC, Cate, and Lattimore allowed Cooper to withdraw her

---

[2]There are no further allegations relating to this letter, including whether a response was ever received.

[3]Cooper had asked Harding about what appears to be a change in job staffing.  Harding said, "First of all, I told her (Officer Lingard) that she could keep her job, and the second reason, personally, is that I don't have the balls or huevos to tell her that she could not have the position, and I don't want to eat crow."  Later, in the same conversation, Harding flexed his chest and said, "If you're lucky, I'll get picked up as an associate warden."

1   complaint against Harding.  Cate and Lattimore did not take any action on their own regarding

2   Harding or any hostile environment.

3           On January 22, 2008, Warden Patrick, in front of Lattimore, made offensive comments to

4   Cooper while discussing job expectations.[4]  Neither Patrick nor Lattimore acknowledged that job

5   expectations and job assignments were based on seniority.

6           On December 29, 2008, Sanders upbraided and orally reprimanded Cooper about her job

7   performance, despite the absence of any complaints.  Sanders also unjustifiably disciplined

8   Cooper by giving her on the job training and a job expectations memo, despite Cooper having

9   properly performed her duties.

10          On February 7, 2009, Cooper was passed over for/denied overtime by Sergeant Todisco.

11  Todisco was following her practice of overlooking employees whose seniority entitled them to be

12  assigned overtime.  Cooper reported Todisco's policy to Tann and Sanders, but they did nothing

13  about it.

14          On April 7, 2009, Capt. Arrellano told Cooper that Tann had given instructions that

15  Cooper was to notify Arrellano whenever Cooper varied her work hours.  Cooper filed a

16  grievance about this condition.

17          On April 20, 2009, Cooper filed an excluded employee grievance, in which she alleged

18  that she was being subjected to a hostile environment and retaliation.  On June 22, 2009,

19  Lattimore responded to this grievance.  Lattimore informed Cooper of the prison's zero tolerance

20  policy regarding hostile work environment, but found that Cooper's complaints were

21  unsubstantiated.  Lattimore also stated that Cooper was not required to notify Capt. Arrellano

22  about work schedule changes.

23          On May 1, 2009, Tann attempted to set Cooper up by getting her to violate/approve of a

24  violation of established prison policy.  Tann sent a sergeant and a captain with the driver's

25  licenses of individuals who were attempting to attend a Prison event.  The captain told Cooper

26  that an additional security check of the licenses was unnecessary, despite established procedures

27

28          [4]Warden Patrick said, ". . . you are not authorized to make any job changes or moves, and you should keep
    your opinion to yourself because you know how people take it out of context and then it would be hanging on the
    board there."  As Cooper was leaving, Patrick asked, "Are my eyes still brown?  Is there going to be any retaliation?"

to the contrary.  Cooper did not listen to the captain, but instead followed the established

procedure.

On May 3, 2009, visiting staff were notified of the discontinuation of the Get On The Bus

program, and of the discontinuation of non-essential visiting at all CDC sites.

On May 7, 2009, Cooper was notified that visiting on weekends would be discontinued.

Cooper was also notified that all visiting staff, except for Supervisors and the Family Visiting

Officer, would not be redirected/reassigned on those days.

On May 8, 2009, Cooper was called into the Warden's office by Tann and informed by

Cavazos that the position of Visiting Lieutenant was being deleted, that Cooper would be

redirected to any vacant Lieutenant position, and that Cooper would be redirected to inmate

appeals on Tuesdays and Fridays.

On May 11, 2009, Tann exempted a Visiting Sergeant from redirection, but did not

exempt Cooper.

On June 9, 2009, Capt. Scott called Cooper into her office for on the job training

regarding administrative segregation.  It appears that Capt. Scott told Cooper that Sanders had

recommended Cooper for progressive discipline.[5]

On July 17, 2009, Cooper was ordered to report to the Madera County Hospital for

random drug testing.

On July 31, 2009, at the direction of Tann, Capt. Scott spoke to Cooper on two subjects.

Scott told Cooper that Tann wanted Cooper written up.[6]

On October 2, 2009, Cooper returned from her regular days off and attempted to sign up

for overtime on Third Watch.  She was denied overtime by Sergeant Todisco.  Todisco told

Cooper that Operations Procedure C-065 was being utilized for correctional officers and

correctional lieutenants.  However, such a practice is contrary to Article 20 of the Departmental

Operations Manual Supplement.

On December 30, 2009, Cooper retired early after 22 years of service.  Cooper alleged

---

[5] There is no allegation, however, that Cooper was actually disciplined.

[6] There is no allegation, however, that Cooper was actually written up.

that the prolonged and sustained harassment by Defendants adversely affected her physical and emotional health, including dangerously high blood pressure.

On May 19, 2010, Cooper filed this lawsuit.

**LEGAL FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. The Ninth Circuit has distilled the following principles from Iqbal and Twombly:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. Cal. 2011). If a Rule 12(b)(6) motion is granted,

1   "[the] district court should grant leave to amend even if no request to amend the pleading was

2   made, unless it determines that the pleading could not possibly be cured by the allegation of other

3   facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to

4   amend need not be granted where amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d

5   893, 898 (9th Cir. 2002).

6

7   **DEFENDANTS' MOTION**

8   **1.       42 U.S.C. § 1983 Claims Against CDC**

9   *Arguments*

10          CDC contends that it is entitled to Eleventh Amendment immunity for all of Cooper's §

11   1983 claims.  While unclear, Cooper appears to argue that front pay and back pay are equitable or

12   prospective remedies and thus, are not barred by the Eleventh Amendment.

13   *Resolution*

14          "The Eleventh Amendment bars suits against the State or its agencies for all types of

15   relief . . . ." Krainski v. State ex rel. Bd. of Regents, 616 F.3d 963, 967 (9th Cir. 2010).  Unless a

16   State has waived its Eleventh Amendment immunity or Congress has overridden it, a State or one

17   of its agencies or departments cannot be sued directly in its own name, regardless of the relief

18   sought.  See Kentucky. v. Graham, 473 U.S. 159, 167 n.14 (1985); Pennhurst State Sch. & Hosp.

19   v. Halderman 465 U.S. 89, 100 (1984); Krainski, 616 F.3d at 967; Dittman v. California, 191

20   F.3d 1020, 1025 (9th Cir.1999).  Further, states and their agencies or departments are not

21   considered "persons" for purposes of 42 U.S.C. § 1983.  Will v. Michigan Dep't of State Police,

22   491 U.S. 58, 70 (1989); Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004); Doe v.

23   Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997).

24          Here, § 1983 does not abrogate Eleventh Amendment immunity.  Kentucky, 473 U.S. at

25   169 n.17; Dittman 191 F.3d at 1026.  CDC is an agency of the State of California, and California

26   has not waived its immunity for claims brought under 42 U.S.C. § 1983.  Brown v. California

27   Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009); Dittman, 191 F.3d at 1026.  Because CDC is

28   not a person under 42 U.S.C. § 1983 and has not waived its Eleventh Amendment immunity,

1    dismissal with prejudice of all of Plaintiff's § 1983 claims against CDC is appropriate.[7]  See

2    Will, 491 U.S. at 70; Kentucky, 473 U.S. at 167 n.14; Pennhurst 465 U.S. at 100; Krainski, 616

3    F.3d at 967; Brown, 554 F.3d at 752; Dittman 191 F.3d at 1025-26.

4

5         **2.      Fourteenth Amendment – Due Process (First Claim)**

6         *Arguments*

7         Defendants argue that Cooper fails to identify any statute that creates a property right to

8    her specific position as a Visiting Lieutenant or to overtime pay.  Mere expectations to overtime

9    pay or the particular position are not cognizable property interests.  Alternatively, the law was not

10   so clear that the Defendants would have realized that their conduct violated clearly established

11   law.  Thus, qualified immunity is appropriate.

12        Cooper argues that she was a full-time, permanent employee who could only be

13   terminated for cause.  Because she could only be terminated for cause, she had a protected

14   property interest in continued employment.

15        *Discussion*

16        a.      Procedural Due Process

17        "In procedural due process claims, the deprivation by state action of a constitutionally

18   protected interest in life, liberty or property is not in itself unconstitutional; what is

19   unconstitutional is the deprivation of such an interest without due process of law."  Zinermon v.

20   Burch, 494 U.S. 113, 125 (1986).  Thus, the "constitutional violation actionable under § 1983 is

21   not complete when the deprivation occurs; it is not complete unless and until the State fails to

22   provide due process."  Id. at 126.  A 42 U.S.C. § 1983 claim based upon Fourteenth Amendment

23   procedural due process has three elements: (1) a liberty or property interest protected by the

24   Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.  Ulrich

25   v. City & County of San Francisco, 308 F.3d 968, 974 (9th Cir. 2002); Portman v. County of

26

27        [7]Cooper's argument regarding prospective relief is not persuasive.  Prospective relief is available when a
     state official is sued in his official capacity.  Doe, 131 F.3d at 839.  Here, each of the state officials are sued in their
28   personal capacity only.  Also, it is not clear that Plaintiff's front and back pay claims constitute prospective relief for
     immunity purposes.  Cf. Dube v. Tex. HHS Comm'n, 2011 U.S. Dist. LEXIS 99680 (W.D. Tex. Sept. 6, 2011).

1   Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).  Public employees have a "property interest" in

2   the terms and conditions of their employment if that interest is established "by existing rules or

3   understandings that stem from an independent source such as state law -- rules or understandings

4   that secure certain benefits and that support claims of entitlement to those benefits."  Board of

5   Regents v. Roth, 408 U.S. 564, 576-77 (1972); Ulrich, 308 F.3d at 975.  "If under state law,

6   employment is at-will, then the claimant has no property interest in the job."  Portman, 995 F.2d

7   at 904.  Under California law, "a 'permanent employee,' dismissible only for cause, has a

8   property interest in his continued employment which is protected by due process."  Dorr v.

9   County of Butte, 795 F.2d 875, 876 (9th Cir. 1986); Skelly v. State Personnel Bd., 15 Cal.3d 194,

10  207-08 (1975).

11          Here, Cooper's opposition does not address Defendants' argument regarding the position

12  of Visiting Lieutenant or overtime opportunities.  Thus, Cooper has not shown a protected

13  property interest in the position of Visiting Lieutenant or in overtime opportunities.  Cf. Stiesberg

14  v. California, 80 F.3d 353, 357 (9th Cir. 1996) (holding that a failure to follow administrative

15  procedure prior to transfer to a lateral position did not implicate a protected property interest).

16  Accordingly, to the extent that the SAC can be read to allege a protected property interest in the

17  position of Visiting Lieutenant or in over time pay, those claims will be dismissed.

18          Cooper's opposition, however, indicates that she had a property interest in continued

19  employment because she was only subject to termination for cause.  The Court takes this to be a

20  procedural due process argument.  Cf. Dorr, 795 F.2d at 876; Skelly, 15 Cal.3d at 207-08.

21  However, in the SAC, this cause of action does not actually identify a protected property interest

22  of any kind, does not allege how Defendants deprived her of the protected property interest, and

23  does not allege a lack of process.  Cf. Portman, 995 F.2d at 904.  Thus, the first cause of action

24  does not adequately allege a violation of the Fourteenth Amendment's due process clause.  See

25  Navarro, 250 F.3d at 732; Portman, 995 F.2d at 904.  Dismissal is appropriate.[8]

26

27          [8]Defendants' qualified immunity argument is based on the loss of the Visiting Lieutenant position and on
    denial of overtime opportunities.  Defendants did not raise qualified immunity with respect to a procedural due

28  process property right to continued employment.  Because Defendants did not raise the issue, the Court will not
    address whether qualified immunity would be appropriate for such a procedural due process claim.

b.      Substantive Due Process

Cooper's opposition does not expressly address substantive due process.  As noted above, Cooper's opposition is limited to contending that she had a right to continued employment.  The SAC alleges conduct from 2005 through 2009.  The Ninth Circuit has recognized that there is a circuit split on the issue of whether a public employee has a substantive due process right to continued employment.  See Lum v. Jensen, 876 F.2d 1385, 1389 (9th Cir. 1989).  The Ninth Circuit has noted that most courts have rejected a substantive due process right to continued public employment.  See Engquist v. Oregon Dept. of Ag., 478 F.3d 985, 996-97 (9th Cir. 2007).  However, the Ninth Circuit has yet to decide whether such a substantive due process right actually exists.  See Dunn v. Reynolds Sch. Dist. No. 7, 2010 U.S. Dist. LEXIS 121401 (D. Or. Nov. 15, 2010).  The Court will assume for purposes of this motion only that Cooper had a substantive due process right to continued employment and that the Defendants violated that right.  In light of the circuit split and the silence of the Ninth Circuit, a reasonable official in the Defendants' positions would not have known that their conduct violated the Fourteenth Amendment's substantive due process protections.  See Pearson v. Callahan, 129 S.Ct. 808, 815-16, 821 (2009); Lum, 876 F.2d at 1389.  Therefore, Defendants are entitled to qualified immunity on Cooper's substantive due process claim.  See Pearson, 129 S.Ct. at 815-16, 821; Kern v. Clark County, 231 Fed. Appx. 622 (9th Cir. 2007); Lum 876 F.2d at 1389.

**3.      Fourteenth Amendment – Hostile Work Environment (Second Claim)**

*Arguments*

Defendants argue that there are no allegations that show Cooper was subjected to harassing conduct because of race.  There are no comments by any Defendant that are race-based, and there are no allegations that Cate engaged in any harassing conduct.

Cooper does not directly address this claim in opposition.  With respect to all 42 U.S.C. § 1983 claims, Cooper states that she has alleged sufficient conduct for supervisory liability.  Further, with respect to Title VII hostile work environment, Cooper states that she can prove that she was subjected to a racially hostile work environment and CDC failed to take remedial action.

1    *Discussion*

2    Discriminatory harassment in the form of a hostile work environment may be actionable

3    through a 42 U.S.C. § 1983 claim based on a violation of the Fourteenth Amendment's equal

4    protection clause.  See Kelly v. City of Oakland, 198 F.3d 779, 781 (9th Cir. 1999); Bator v.

5    Hawaii, 39 F.3d 1021, 1028 (9th Cir. 1994); Leleind v. City & County of San Francisco, 576

6    F.Supp.2d 1079, 1100 (N.D. Cal. 2008).  A plaintiff alleging a hostile work  environment based

7    on race must show: (1) that she was subjected to verbal or physical conduct based on her race or

8    national origin; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently

9    severe or pervasive so as to alter the conditions of her employment and create an abusive work

10   environment.[9]  Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005); Vasquez v. County of

11   Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).  The work environment must be both

12   subjectively and objectively hostile.  Galdamez, 415 F.3d at 1023; McGinest v. GTE Serv. Corp.,

13   360 F.3d 1103, 1113 (9th Cir. 2004).  In determining whether a work environment is objectively

14   hostile, courts "look to all of the circumstances, including the frequency, severity, and nature

15   (i.e., physically threatening or humiliating as opposed to merely verbally offensive) of the

16   conduct."  Galdamez, 415 F.3d at 1023; Vasquez, 349 F.3d at 642.  The objective hostility of the

17   environment is considered "from the perspective of a reasonable person belonging to the racial or

18   ethnic group of the plaintiff."  Galdamez, 415 F.3d at 1023; McGinest, 360 F.3d at 1015.  Also,

19   under the equal protection clause, a defendant's discrimination must be intentional.  See Bator,

20   39 F.3d at 1028 n.7; Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1112 (9th

21   Cir. 1991).

22       Here, there are insufficient allegations regarding a racially hostile environment.  The SAC

23   alleges that Cooper is African-American.  See SAC at ¶ 3.  The SAC also alleges that less than

24   3% of the correctional Lieutenants at the Prison are African-American.  See id. at ¶ 6.  The SAC

25   also alleges that, in October 2005, Ms. Sanchez (a visitor to the prison) complained about Cooper

26   not allowing Sanchez's children into the prison.  See id. at ¶ 8.  While complaining about Cooper

27

28       [9]In Title VII and Equal Protection cases, courts apply the same standards for a hostile work environment.
Feingold v. New York, 366 F.3d 138, 158-59 (2d Cir. 2004); Williams v. Seniff, 342 F.3d 774, 791 (7th Cir. 2003).

to another lieutenant, Sanchez twice referred to Cooper as a "nigger." Id.  Cooper then filed a complaint of discrimination against Sanchez.  See id. at ¶ 9.  On October 16, 2005, and then on December 26, 2006, the prison refused to accept Cooper's complaint.  See id. at ¶ 9(a).  The SAC continues to describe either additional complaints or conduct by the Defendants spanning a time frame from March 5, 2007, through December 30, 2009.  See id. at ¶ 9(b)-(u).  Finally, under the second cause of action, the SAC alleges that Defendants "subjected or caused Cooper to be subjected to a deprivation of her right to the equal protection of the law because of her race (African American) . . . ."  Id. at ¶ 18.  There are no other allegations that relate to race.

While Cooper does not have to allege all of her supporting evidence, her factual allegations must plausibly show an objectively hostile work environment based on race.  See Iqbal, 129 S.Ct. at 1949; Johnson, 534 F.3d at 1122.  The only allegation that indicates racial hostility or seems to readily relate to race was an isolated comment in October 2005 by Sanchez, who was a non-employee/co-worker.  Isolated incidents are generally insufficient to establish a hostile work environment. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Harris v. Forklift Sys., 510 U.S. 17, 21 (1996) (". . . mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment . . . .").  There is nothing about the remaining allegations that relate in any way to race.  That is, as the allegations stand, there is no indication of an objectively, racially hostile work environment.  Accordingly, dismissal of this cause of action is appropriate.[10]


### 4.     First Amendment – Retaliation (Third Claim)

*Arguments*

Defendants argue that Cooper has pled no facts that indicate that the individual defendants acted with a retaliatory intent.  Notably, there are no allegations that any of the individual defendants knew about any protected activity by Cooper.  Without such knowledge,

---

[10]Dismissal of this cause of action against Cate is appropriate for an additional reason.  The second cause of action does not indicate that Cate either acquiesced in or somehow created a racially hostile work environment.  See Menotti v. City of Seattle, 409 F.3d 1113, 1149 (9th Cir. 2005).  Indeed, up to and including the second cause of action, there are no factual allegations regarding any conduct by Cate.

1    there can be no retaliatory intent.

2            Cooper does not address this argument or defend this cause of action expressly.

3    *Discussion*

4            First Amendment retaliation claims against a government employer are analyzed through

5    a sequential five-step inquiry:  (1) whether the plaintiff spoke on a matter of public concern; (2)

6    whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's

7    protected speech was a substantial or motivating factor in the adverse employment action; (4)

8    whether the state employer had an adequate justification for treating the employee differently

9    from other members of the general public; and (5) whether the state employer would have taken

10   the adverse employment action even absent the protected speech.  Huppert v. City of Pittsburg,

11   574 F.3d 696, 702 (9th Cir. 2009); Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009).

12           Here, it is not at all clear to the Court which conduct Cooper contends is protected by the

13   First Amendment.  As a consequence, the Court cannot determine whether the individual

14   Defendants even had knowledge of Cooper's protected speech.  If a defendant does not have

15   knowledge of protected speech, then the protected speech cannot be a substantial or motivating

16   factor in any adverse employment actions.  See Alpha Energy Savers, Inc. v. Hansen, 381 F.3d

17   917, 928 (9th Cir. 2004); Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 750-52

18   (9th Cir. 2001).  In the absence of an opposition, the Court will dismiss this cause of action for

19   two reasons: (1) failure to sufficiently identify which speech is entitled to First Amendment

20   protection, and (2) failure to allege that the Defendants had knowledge of the protected speech.

21

22           **5.      42 U.S.C. § 1986 – Failure To Supervise (Fourth Claim)**

23           In opposition, Plaintiff states that she does not oppose dismissal of this cause of action.

24   See Opposition at 1 n.1.  In light of the express non-opposition, the Court will dismiss this claim.

25

26           **6.      Fourteenth Amendment – Constructive Discharge (Fifth Claim)**

27   *Arguments*

28           Defendants argue that there are no allegations that Cate personally participated in any

                                                    12

1  conduct.  There are also no allegations that Cate knew of improper conduct against Cooper, or

2  that he implemented or promulgated a policy that harmed Cooper.  Thus, there is no supervisor

3  liability available against Cate.  Further, the allegations are not sufficiently severe that they rise

4  to the level of a constructive discharge.  For example, the Ninth Circuit has held that there was

5  no constructive discharge as a matter of law where an employee was told that he should leave

6  employment, was told he would be referred for counseling, was assigned cases that were beneath

7  him, and was given the cold shoulder, but was never demoted, disciplined, or docked pay.  Here,

8  there are no allegations of pay cuts, demotions, or discipline.  The allegations are not so severe

9  that a reasonable person would have found the working conditions to be intolerable.

10      Cooper argues that the SAC plausibly shows a constructive discharge since it alleges a

11  series of events, and those events led to the creation of a hostile environment and a constructive

12  discharge.  The continuous acts would have caused any reasonable person to resign.

13      *Discussion*

14      To establish a § 1983 equal protection violation, a plaintiff must show "that the

15  defendants, acting under color of state law, discriminated against them as members of an

16  identifiable class and that the discrimination was intentional."  Flores v. Morgan Hill Unified

17  Sch. Dist., 324 F.3d 1130, 1134 (9th Cir. 2003).   That is, a plaintiff must show that the

18  defendant acted with an intent or purpose to discriminate against her based upon her membership

19  in a protected class.  Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Barren v.

20  Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  Here, there are no allegations under this cause

21  of action that plausibly suggest that Defendants intentionally engaged in conduct because of

22  Cooper's membership in an identifiable class.  Thus, dismissal is appropriate.[11]

23      With respect to due process, Cooper does not indicate whether she is relying on

24  substantive due process or procedural due process.  To the extent that she relies on substantive

25  due process, for the reasons discussed above, qualified immunity is appropriate.  See Pearson,

26

27          [11]Contrary to Cate's argument, the allegations under this cause of action indicate that Cate knew that
   Cooper's working conditions had become intolerable, but he failed to take corrective action.  See SAC at ¶ 28.  This

28  indicates supervisor liability.  See Menotti, 409 F.3d at 1149.  Nevertheless, since there is no equal protection claim
   pled, there is no supervisor liability for an equal protection claim.

1   129 S.Ct. at 815-16, 821; Kern, 231 Fed. Appx. at 622; Lum 876 F.2d at 1389.  To the extent that

2   Cooper relies on procedural due process, dismissal is appropriate because she has failed to allege

3   a lack of process.  See Portman, 995 F.2d at 904.

4        Also, if state law provides a sufficient property interest in continued employment, then

5   conduct that rises to the level of a constructive discharge may constitute a deprivation of that

6   property interest.  See Huskey v. City of San Jose, 204 F.3d 893, 900-02 (9th Cir. 2000); Parrett

7   v. Connersville, 737 F.2d 690, 694 (7th Cir. 1984).  "A constructive discharge occurs when the

8   working conditions deteriorate. . . to the point that they become sufficiently extraordinary and

9   egregious to overcome the normal motivation of a competent, diligent, and reasonable employee

10  to remain on the job to earn a livelihood and to serve his or her employer."  Poland v. Chertoff,

11  494 F.3d 1174, 1184 (9th Cir. 2007); Brooks v. City of San Mateo, 229 F.3d 917, 930 (9th Cir.

12  2000).  The bar for a constructive discharge is set high.  Poland, 494 F.3d at 1184.  Constructive

13  discharge requires a showing that a reasonable person in the plaintiff's position would have felt

14  that she was forced to quit because of intolerable and discriminatory working conditions.

15  Huskey, 204 F.3d at 900.  Whether working conditions have become so intolerable as to justify a

16  reasonable employee's decision to resign is normally a question of fact for the jury, but, in

17  appropriate cases, the court may determine that a plaintiff's allegations are insufficient to

18  establish intolerable working conditions.  Huskey, 204 F.3d at 900; (citing Schnidrig v.

19  Columbia Mach., Inc., 80 F.3d 1406, 1411-12 (9th Cir. 1996)).

20       Here, the SAC contains a lengthy list of occurrences that Cooper contends plausibly

21  shows a constructive discharge.  Between 2006 and 2009, the SAC alleges two instances of harsh

22  words from supervisors (in January 2008 and December 2008),[12] one instance of discipline (in

23  December 2008),[13] one instance of being asked by a superior to do something against established

24  policy (in May 2009), two instances of being denied overtime (in February 2009 and October

25

26       [12]There was also the incident with Capt. Harding that occurred in January 2008, but Cooper withdrew her
complaint against Harding.  Without further explanation, the withdrawal of the complaint indicates that the incident
27  was minor in nature.

28       [13]The SAC alleges that Cooper was informed of two instances (in June 2009 and July 2009) where either
Tann or Sanders wanted Cooper disciplined or "written up."  However, there are no other allegations that Cooper
was actually disciplined.  Paragraph 9(g) is the only section that expressly alleges that Cooper was disciplined.

14

2009), and redirection and loss of duties following a directive that all CDC facilities, not just the Prison, reduce all non-essential visitation (in May 2009).[14]  There are no allegations that Cooper was demoted or suffered a cut in pay.[15]  These events allegedly led to Cooper's resignation on December 29, 2009.[16]

This case appears to be similar to *Huskey*.  In that case, David Huskey experienced a lower performance evaluation, cold relationships with his supervisors and staff, harsh criticisms from his supervisors, reassignments, significantly reduced responsibilities, was told that he should look for a new job, and was told that if he stayed at the office that he would be sent to counseling.  See Huskey, 204 F.3d at 896-98.  This conduct occurred between November 1995 and December 1996.  See id.  The Ninth Circuit found that this conduct was not sufficiently intolerable to consitute a constructive discharge.  See id. at 901.  "Because he failed to allege facts sufficient to support a finding of constructive discharge, Huskey also failed to allege facts sufficient to support a finding that he was deprived of a property interest."  Id. at 902.

It is true that there are differences between Cooper's allegations and the facts in *Huskey*.[17]  However, it is not apparent that those differences are material.  Cooper's opposition is brief and

---

[14]However, in March 2007, Cooper complained in writing about an undue and excessive work load.  There are no allegations to indicate that Cooper's work load was reduced in response to this letter.  Without further allegations, a reduction in Cooper's duties would seem to be consistent with Cooper's March 2007 letter.

[15]As noted, Cooper alleges two instances of being denied overtime.  However, Cooper does not allege that she was guaranteed any amount of overtime as part of her compensation.  Thus, her pay was not cut.

[16]There are other occurrences alleged in the SAC, but those allegations, as currently pled, are not probative.  For instance, Cooper alleges that she was sent for "random drug testing."  However, as pled, random drug testing is just that – random.  There are no allegations that the drug testing was not truly random, or that her position was exempt from such testing, or that she was excessively tested.  Cooper also alleges that she received on the job training.  On its face, on the job training would appear to be innocuous.  The SAC does not allege either that on job training constitutes a discipline or that Cooper's on the job training was improper or unjustified.  Cooper also alleges that, in April 2009, Tann directed that Cooper was to inform another captain if Cooper deviated from her schedule.  However, Lattimore countermanded this order in response to Cooper's complaint, and there is no indication that Cooper ever actually reported to the captain.  In other words, Cooper's complaint was sustained, and she obtained relief from Lattimore.  Finally, Cooper alleges that her April 2009 complaint of discrimination and harassment was not sustained.  However, the facts alleged in the SAC do not show actionable discrimination or harassment.

[17]For example, there are no allegations that a superior asked Huskey to do something that was contrary to established policy.  However, Tann made the request on May 1, 2009.  There is no indication that he or anyone else ever again asked Cooper to violate established policy.  In other words, over seven months elapsed from this incident in May to Cooper's December resignation.  Further, there is no indication that any negative consequences flowed from this incident.

1   significantly does not address *Huskey* in any manner.  Cooper does not cite cases that either

2   distinguish *Huskey* or indicate that the facts as currently pled are sufficient to show a constructive

3   discharge.  As noted, constructive discharge is a high bar.  <u>Poland</u>, 494 F.3d at 1184.  This theory

4   requires facts that indicate working conditions are so severe and intolerable that a reasonable

5   person would feel forced to quit.  <u>See Poland</u>, 494 F.3d at 1184; <u>Huskey</u>, 204 F.3d at 900.  As

6   currently pled, the facts are too similar to *Huskey* and do not indicate that a reasonable person

7   would have found the conditions intolerable.[18]  Dismissal of this claim is appropriate.  <u>See</u>

8   <u>Huskey</u>, 204 F.3d at 896-902.

9

10       **7.       Title VII – Race – Terms & Conditions (Sixth & Eleventh Claims)**

11       *Arguments*

12       Defendants argue that Cooper has failed to allege a constructive discharge, and thus has

13   failed to allege any adverse employment actions.  Further, this claim fails because there are no

14   facts which indicate that other employees were treated more favorably

15       *Discussion*

16       Title VII prohibits discrimination in the employment context "because of" *inter alia* an

17   employee's race.  <u>See</u> 42 U.S.C. § 2000e-2(a)(1); <u>McGinest</u>, 360 F.3d at 1112.  One way of

18   showing discrimination because of race is through direct evidence, such as the use of racial

19   epithets by decision makers or being told that the adverse conduct is occurring because of race.

20   <u>Dominguez-Curry v. Nev. Transp. Dep't</u>, 424 F.3d 1027, 1038-39 (9th Cir. 2005).  Another

21   method of showing that discrimination is because of race is by establishing a *prima facie* case of

22   discrimination through the *McDonnel Douglas* framework, which requires a plaintiff to show:

23   (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an

24   adverse employment action; and (4) similarly situated employees not in his protected class

25   received more favorable treatment.  <u>Kang v. U. Lim Am., Inc.</u>, 296 F.3d 810, 818 (9th Cir. 2002).

26       Here, Cooper's allegations are too conclusory.  There is an absence of factual allegations

27

28   _____

     [18]The Court is not requiring a heightened pleading standard.  It is not necessary for Cooper to allege every fact that she has to support her constructive discharge claim.  However, the numerous facts that are pled do not show an objectively egregious and intolerable work environment.

that plausibly indicate that Cooper was treated disparately because of her race.  There are no allegations that decision makers used racial epithets or told Cooper that what was occurring was because of her race.  Further, there are no allegations that other similarly situated employees, who were not of Cooper's race, were treated more favorably.  While Cooper does not need to marshal and allege her entire case, she needs to allege enough facts that plausibly indicate that adverse employment actions were taken against her because of race.[19]  See Iqbal, 129 S.Ct. at 1949; Starr, 652 F.3d at 1216.  Dismissal of this cause of action is appropriate.

### 8.    Title VII – Gender – Terms & Conditions (Seventh & Eleventh Claims)

*Defendant's Argument*

Defendants argue that this claim fails for the same reasons as her Title VII race claim. Cooper fails to allege that she suffered an adverse action and that male employees with similar qualifications were treated more favorably.

*Discussion*

For the same reason that Cooper's Title VII racial disparate treatment claim is not sufficiently alleged, so too is this claim for Title VII gender/sex disparate treatment.  There are neither allegations of direct evidence related to gender, nor are there allegations that indicate that similarly situated men were treated more favorably.  See Dominguez-Curry, 424 F.3d at 1038-39; Villiarimo v. Aloha Island Air, Inc. 281 F.3d 1054, 1062 (9th Cir. 2002).  The SAC does not plausibly indicate that adverse employment actions were taken against Cooper because of gender. Accordingly, dismissal is appropriate.

### 9.    Title VII – Retaliation (Eighth Claim)

*Defendant's Argument*

Defendants concede that Cooper's filed complaint against Capt. Harding is protected activity under Title VII.  However, there are insufficient facts alleged to indicate a causal link

---

[19]For example, as discussed below, an allegation like the one found at ¶ 42 (dealing with disparate treatment due to age) would be sufficient.

between any adverse action and Cooper's protected complaint.  Cooper does not attempt to link any of the acts alleged against the individual defendants, nor does she even allege that the individual defendants were aware of Cooper's protected activity.

Cooper states that the individual Defendants knew about Cooper's protected activity, and the adverse actions that they took against her were temporally related to her protected activity.

*Discussion*

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. See Nilsson v. City of Mesa, 503 F.3d 947, 953-54 (9th Cir. 2007); Brooks, 229 F.3d at 928.  The second element requires a showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006); Morales-Vallellanes v. Potter, 605 F.3d 27, 33 (1st Cir. 2010).  "[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." Van Asdale v. Int'l Game Tech., 577 F.3d 989, 1002 (9th Cir. 2009).  However, the plaintiff must show that the particular decision maker who authorized or committed the adverse employment action was aware that the plaintiff had engaged in protected activity.  Raad v. Fairbanks N. Star Borough, 323 F.3d 1185, 1197 (9th Cir. 2003); Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982); Gunther v. County of Washington, 623 F.2d 1303, 1316 (9th Cir. 1979).

Here, there are insufficient allegations regarding a link from protected conduct to adverse employment actions.  Further, there are insufficient allegations that those who engaged in the adverse employment actions had knowledge of Cooper's protected conduct.  Defendants are correct that the only individuals who appear to have been aware of protected conduct were Cate and Lattimore.  See SAC at ¶¶ 9(e), (j).  However, there are no allegations that either Cate or Lattimore did anything towards/against Cooper.  The conduct alleged is by other individuals who are not alleged to have had knowledge of any protected conduct by Cooper.  Cf. Raad, 323 F.3d

at 1197; <u>Cohen</u>, 686 F.2d at 796; <u>Gunther</u>, 623 F.3d at 1316.  Without allegations that the individuals who adversely treated Cooper were aware of her protected conduct, or at least were acting pursuant to the orders of those who were aware of Cooper's protected conduct, <u>see</u> <u>id.</u>, the SAC's retaliation claim has not been plausibly alleged.  Dismissal of this claim is appropriate.

**10.**      **Title VII – Retaliatory Hostile Work Environment (Ninth Claim)**

*Defendant's Argument*

Defendants argue that Cooper has failed to allege facts from which it can be plausibly inferred that those who were responsible for creating the hostile environment knew that Cooper had engaged in protected activity.

*Discussion*

It is possible for words or conduct that are done in retaliation for protected conduct to eventually rise to the level of a hostile work environment.  <u>See</u> <u>Hardage v. CBS Broad. Inc.</u>, 427 F.3d 1177, 1189 (9th Cir. 2005).  However, Defendants are correct.  For the same reason that Cooper's eighth claim for retaliation fails, so too fails this claim.  <u>See</u> <u>Raad</u>, 323 F.3d at 1197; <u>Cohen</u>, 686 F.2d at 796; <u>Gunther</u>, 623 F.3d at 1316.  Dismissal is appropriate.

**11.**      **Title VII – Race – Hostile Work Environment (Tenth Claim)**

*Defendant's Argument*

Defendants argue that, for the same reasons that her second cause of action fail, so too fails this claim for hostile work environment.

*Discussion*

CDC is correct.  For the same reasons that were discussed with respect to the second cause of action, dismissal of this cause of action is appropriate.

**12.**      **Age Discrimination in Employment Act (Twelfth Claim)**

*Defendant's Argument*

Defendants argue that there are no facts alleged that show younger employees were

treated more favorably.  The allegation that younger employees were treated better is an insufficient, conclusory statement.

Cooper states that the SAC sufficiently alleges a claim for age discrimination.

*Discussion*

At ¶ 42, the SAC alleges: ". . . CDC treated employees with [Cooper's] rank and classification who were substantially younger than she more favorably than it treated her, including but not limited to, not redirecting them to out of class positions . . . ."  This allegation sufficiently identifies an example of how substantially younger employees were treated more favorably.   Dismissal is not appropriate.

## 13.   Punitive Damages

*Arguments*

Defendants argue that, because there are no viable claims alleged against the individual defendants, her request for punitive damages fails.

Cooper argues that punitive damages may be awarded against the individual Defendants.

*Discussion*[20]

The only viable claim alleged in the SAC is pursuant to the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 621 et seq.).  However, punitive damages are not available under the ADEA.  See Ahlmeyer v. Nevada Sys. of Higher Educ., 555 F.3d 1051, 1059 (9th Cir. 2009); Bruno v. Western Elec. Co., 829 F.2d 957, 966-967 (10th Cir. 1987).  Because there are no viable causes of action alleged against the individual Defendants, Cooper's prayer for punitive damages will be dismissed.

## CONCLUSION

Defendants move to dismiss all of claims against them.

---

[20]This motion is brought as a motion to strike.  Recently, the Ninth Circuit held that a Rule 12(f) motion is not the proper vehicle to dismiss damages that are not available as a matter of law; instead, a Rule 12(b)(6) or Rule 56 motion is proper.  See Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974-75 (9th Cir. 2010).  As such, the Court will view Defendants' Rule 12(f) motion as a Rule 12(b)(6) motion.

1    As to the 42 U.S.C. § 1983 claims against CDC, dismissal with prejudice is appropriate

2    because CDC enjoys Eleventh Amendment immunity and is not a person under that law.

3    As to the first cause of action for violation of the Fourteenth Amendment due process

4    clause, dismissal is appropriate.  With respect to any substantive due process claim, the law is not

5    clearly established that a public employee has a substantive due process right to continued

6    employment.  Thus, qualified immunity is appropriate, and dismissal of such a claim will be with

7    prejudice.  With respect to any procedural due process claims about the particular position of

8    Visiting Lieutenant or overtime opportunity, dismissal with prejudice is appropriate because

9    Cooper's opposition does not address Defendants' arguments and did not distinguish *Stiesberg*.

10   With respect to a procedural due process right to continued employment, dismissal is appropriate

11   because the first cause of action does not expressly identify a protected property interest, explain

12   how she was deprived of that interest, or allege a lack of process.  However, since it is not clear

13   that amendment of this claim would be futile, dismissal will be without prejudice.

14   As to the second cause of action for violation of the Fourteenth Amendment equal

15   protection clause, the SAC's allegations do not plausibly indicate that an objectively hostile

16   environment was created.  Because it is not clear that amendment would be futile, dismissal will

17   be without prejudice.

18   As to the third cause of action for retaliation, dismissal is appropriate because the SAC

19   does not sufficiently identify which speech is entitled to First Amendment protection, and does

20   not sufficiently allege that the Defendants had knowledge of protected speech.  Because it is not

21   clear that amendment would be futile, dismissal will be without prejudice.

22   As to the fourth cause of action for violation of 42 U.S.C. § 1986, dismissal is appropriate

23   because Cooper has agreed to withdraw this cause of action.

24   As to the fifth cause of action for Fourteenth Amendment constructive discharge,

25   dismissal is appropriate for the same reasons identified under the first cause of action.

26   Additionally, dismissal is appropriate because the allegations do not sufficiently indicate

27   objectively intolerable working conditions.  Because it is not clear that amendment would be

28   futile, dismissal of any constructive discharge procedural due process claim will be without

1  prejudice.[21]

2       As to the sixth cause of action for Title VII disparate treatment based on race, dismissal is

3  appropriate since the SAC does not plausibly indicate that Cooper was treated disparately

4  because of her race.  Because it is not apparent that amendment would be futile, dismissal will be

5  without prejudice.

6       As to the seventh cause of action for Title VII disparate treatment based on gender,

7  dismissal is appropriate since the SAC does not plausibly indicate that Cooper was treated

8  disparately because of her gender.  Because it is not apparent that amendment would be futile,

9  dismissal will be without prejudice.

10      As to the eighth cause of action for Title VII retaliation, dismissal is appropriate because

11 there are insufficient allegations that those who engaged in retaliatory conduct either knew of the

12 protected conduct or were directed to act by those who were aware of the protected conduct.

13 Because it is not apparent that amendment would be futile, dismissal will be without prejudice.

14      As to the ninth cause of action for Title VII retaliatory hostile work environment,

15 dismissal without prejudice is appropriate for the same reasons that the eighth cause of action

16 was dismissed.

17      As to the tenth cause of action for Title VII racial hostile work environment, dismissal

18 without prejudice is appropriate for the same reasons that the second cause of action was

19 dismissed.

20      As to the eleventh cause of action, dismissal is appropriate because it is duplicative of the

21 sixth and seventh causes of action.

22      As to the twelfth cause of action, dismissal is inappropriate because the SAC alleges that

23 younger employees were treated more favorably with respect to redirection/reassignment.

24      Finally, dismissal without prejudice of the SAC's prayer for punitive damages is

25 appropriate because there are no viable causes of action in the SAC that provide for punitive

26 damages.

27

28
_____

[21]Defendants did not move for qualified immunity on the fifth cause of action.  However, from the SAC and the opposition, it is not clear that there is any distinction between the first and fifth causes of action.  As such, qualified immunity is appropriate for any substantive due process claim regarding continued public employment.

22

Accordingly, IT IS HEREBY ORDERED that Defendants' motion to dismiss is GRANTED in part, and DENIED in part as follows:

1.      All 42 U.S.C. § 1983 claims against Defendant CDC are DISMISSED with prejudice;

2.      The Fourteenth Amendment substantive due process claims against the individual Defendants are DISMISSED with prejudice on the grounds of qualified immunity;

3.      The fourth cause of action is DISMISSED pursuant to Cooper's agreed dismissal;

4.      The eleventh cause of action is DISMISSED as duplicative;

5.      The first, second, third, fifth, sixth, seventh, eighth, ninth, and tenth causes of action are DISMISSED without prejudice;

6.      Cooper may file an amended complaint that is consistent with this order within twenty (20) days of service of this order; and

7.      If Cooper does not file a timely amended complaint, then Defendants may file an answer within twenty-seven (27) days of service of this order.

IT IS SO ORDERED.

Dated:    November 15, 2011    

CHIEF UNITED STATES DISTRICT JUDGE